**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

GEORGE MERO,

                              Plaintiff,

  v.                                              No. 05-CV-1293
                                                      (DRH)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

---

**APPEARANCES:**                           **OF COUNSEL:**

STEPHEN J. MASTAITIS, JR., ESQ.
Attorney for Plaintiff
1412 Route 9P
Saratoga Springs, New York 12866

HON. GLENN T. SUDDABY              WILLIAM H. PEASE, ESQ.
United States Attorney for the          Assistant United States Attorney
   Northern District of New York
Attorney for Defendant
100 South Clinton Street
Syracuse, New York 13261-7198

OFF ICE OF REGIONAL GENERAL     KIMBERLY L. SCHIRO, ESQ
   COUNSEL                                 Special Assistant United States Attorney
Social Security Administration
Attorney for Defendant
Region II
26 Federal Plaza - Room 3904
New York, New York 10278

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER

     Plaintiff George Mero ("Mero") brought this action pursuant to 42 U.S.C. § 405(g)

seeking review of a decision by the Commissioner of Social Security ("Commissioner")

denying his application for benefits under the Social Security Act. Mero moves for a finding of disability and the Commissioner cross-moves for a judgment on the pleadings. Docket Nos. 11, 13. For the reasons which follow, the Commissioner's decision is remanded for further proceedings.

## I. Procedural History

On June 20, 2001, Mero filed an application for disability insurance benefits pursuant to the Social Security Act, 42 U.S.C. § 401 et seq. T. 80-82.[1] On December 5, 2001, the application was denied. T. 27-31. Mero requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ Thomas P. Zolezzi on November 24, 2003 and February 11, 2004. T. 19, 32. In a decision dated April 26, 2004, the ALJ held that Mero was not entitled to disability benefits. T. 25-26. On May 26, 2004, Mero filed a request for review with the Appeals Council. T. 15. The Appeals Council denied Mero's request for review, thus making the ALJ's findings the final decision of the Commissioner. T. 3-5. This action followed.

## II. Contentions

Mero contends that the ALJ erred when he failed to give controlling weight to his treating physician's medical opinion, determine properly his residual functional capacity, and give appropriate weight to his testimony. Mero also contends that the Commissioner

---

[1] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Docket No. 6.

failed to preserve an accurate and complete record of his administrative hearings.  The Commissioner contends that there was substantial evidence to support the determination that Mero was not disabled.

### III. Facts

Mero is currently forty-one years old and completed high school and three years of college.  T. 80, 92.  Mero previously worked as a loan officer, accounts receivable and customer service representative, car dealer, and advertising clerk.  T. 19, 87.  Mero alleges that he became disabled on January 1, 2000 due to chronic low back pain, spinal stenosis[2], obesity, and depression.  T. 20, 80, 260.

### IV.  Standard of Review

#### A. Disability Criteria

A claimant seeking disability benefits must establish that "he [or she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2003).  In addition, the claimant's impairments must be of such severity that he or she is not able to do previous work or any other substantial gainful work considering the claimant's age, education, and work experience, regardless of whether such work exists

---

[2]The "narrowing or stricture of a duct or canal."  Dorland's Illustrated Medical Dictionary 1576 (28th ed. 1994).

3

in the immediate area, whether a specific job vacancy exists, or whether the claimant would be hired if he or she applied for work. 42 U.S.C. § 1382c(a)(3)(B) (2003).

The Commissioner uses a five-step process, set forth in 20 C.F.R. § 416.920, to evaluate SSI disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work. Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. § 416.920 (2003).

The plaintiff has the burden of establishing disability at the first four steps. Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000). However, if the plaintiff establishes that an impairment prevents him or her from performing past work, the burden then shifts to the Commissioner to determine if there is other work which the claimant could perform. Id.

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether

the correct legal standards were applied and whether substantial evidence supports the decision.  Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Shaw, 221 F.3d at 131 (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Prentice v. Apfel, No. 96 Civ. 851(RSP), 1998 WL 166849, at *3 (N.D.N.Y. Apr. 8, 1998) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).  A court, however, cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).  If the Commissioner's finding is supported by substantial evidence, it is conclusive.  Bush v. Shalala, 94 F.3d 40, 45 (2d Cir. 1996).

### V.  Discussion

### A. Medical Evidence

Mero alleges that he became disabled on January 1, 2000 due to chronic low back pain, spinal stenosis, obesity, and depression.  T. 20, 80, 260.  On January 22, 2001, Mero was examined by Dr. Khalil A. Nazir after complaining of back pain.  T. 148.  Dr. Nazir noted moderate-to-severe paraspinal spasms and recommended Mero see an orthopedist

as soon as possible.  Id.  Shortly thereafter, Mero underwent an MRI of his spine which showed central disc herniation and protrusion.  T. 190.  On February 26, 2001, Mero was admitted to St. Peter's Hospital and underwent a left L4-5 laminotomy, mesial facetectomy and foraminotomy with excision of a herniated disc.  T. 131.  Dr. Thomas J. Lovely noted that at the time of operation, significant compression was found on the nerve root which was freed at the end of the procedure.  Id.  On April 13, 2001, Dr. Lovely examined Mero again and noted that although he still had aches and pains, he was progressing and felt much improved after his surgery.  T. 128.  On June 1, 2001, Mero was referred by Dr. Lovely for an updated MRI scan.  T. 126-27.  The MRI scan showed internal disc degeneration and epidural fibrosis, but there was no evidence of recurrent or residual herniated nucleus pulposus or central canal stenosis.  T. 133-34.

On September 7, 2001, Mero was consultatively examined by Dr. William Rogers.  T. 152-54.  Dr. Rogers concluded that Mero's main restriction would be sitting more than fifteen minutes at a time and frequent bending or moderate-to-heavy lifting.  T. 154.  On October 12, 2001, Mero was given a psychiatric evaluation by Dr. Robin Myers, a consultative psychologist.  T. 155.  Dr. Myers diagnosed Mero as having moderate major depressive disorder and recommended he begin psychological or psychiatric treatment.  T. 159.  Dr. Myers found that Mero could follow and understand simple directions, perform simple rote tasks under supervision, maintain attention and concentration for tasks, and make appropriate decisions.  Id.  However, Dr. Myers also found that Mero would have more difficulties with his motivation and ability to sustain his concentration through a prolonged period of time.  Id.  Dr. Myers concluded that Mero's prognosis was fair.  Id.

On January 22, 2001, Mero began treatment with Dr. Antonio Gregorian, his primary care physician. T. 202. On November 10, 2003, Dr. Gregorian concluded that Mero was permanently disabled. T. 202-04. Dr. Gregorian also determined that Mero could sit for four hours at a time and four hours total during an eight-hour workday. T. 239.

### B. Treating Physician's Rule

Mero contends that the ALJ erred when evaluating the medical evidence from his treating physician, Dr. Gregorian.

When evaluating a claim seeking disability benefits, factors to be considered include objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of disability, and pain related by the claimant. Harris v. R.R. Ret. Bd., 948 F.2d 123, 126 (2d Cir. 1991). Generally, more weight is given to a treating source. Under the regulations, a treating source's opinion is entitled to controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2) (2003); Shaw, 221 F.3d at 134. Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons." Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to assess the following factors in determining how much weight to accord the physician's opinion: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal, 134 F.3d at 503. If other evidence in the

7

record conflicts with the opinion of the treating physician, this opinion will not be deemed controlling or conclusive, and the less consistent the opinion is, the less weight it will be given. Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999). Ultimately, the final determination of disability and a claimant's inability to work rests with the Commissioner. Id. at 133-34; see 20 C.F.R. §§ 404.1527(e), 416.927(e) (2003).

On November 10, 2003, Dr. Gregorian completed a Physical Capacities Evaluation ("PCE") of Mero. T. 202-04. In his evaluation, Dr. Gregorian initially concluded that during an eight-hour workday, Mero could sit for six hours at one time and for three hours total. T. 203. However, due to the inconsistency of his finding, Dr. Gregorian amended his assessment on January 15, 2004 to indicate that Mero could only sit for three hours at a time and for three hours total during an eight-hour workday. T. 220. As a result of the conflicting assessments, the ALJ contacted Dr. Gregorian by letter dated February 13, 2004 and requested that he clarify his opinion. T. 222. In response, Dr. Gregorian provided an updated PCE and concluded that during an eight-hour workday, Mero could sit for six hours at one time and for six hours total. T. 224. Mero objected to Dr. Gregorian's updated assessment, arguing that there was no basis for Dr. Gregorian to conclude that Mero could "sit for six hours both during an eight hour day and continuously." T. 226. Mero then forwarded all three previous assessments to Dr. Gregorian and requested that he provide an updated assessment. T. 227. On April 7, 2004, Dr. Gregorian provided an updated PCE and concluded that during an eight-hour workday, Mero could sit for four hours at one

time and for four hours total.  T. 240.[3]

In his decision, the ALJ discussed the inconsistencies among Dr. Gregorian's assessments and noted that although Dr. Gregorian provided an updated PCE, he failed to submit any documentation to support his opinion.  T. 25, 222.  As a result of these inconsistencies, the ALJ concluded that more weight should be given to Dr. Gregorian's original assessment.  T. 25.  However, as Mero's counsel pointed out in a March 17, 2004 letter to the ALJ, Dr. Gregorian's initial assessment that Mero could sit for six hours at one time during an eight hour workday and for three hours total was factually inconsistent.  T. 226.  The ALJ erred in arbitrarily selecting this particular assessment from among Dr. Gregorian's various opinions, particularly given its internal inconsistency, without some evidence to support selecting that opinion for reliance.  Therefore, this case must be remanded for clarification of the ALJ's reliance on Dr. Gregorian's factually inconsistent assessment of November 10, 2003.

### C. Subjective Complaints of Pain

Mero also contends that the ALJ's decision not to credit his subjective complaints of disabling pain fully was in error.

The basis for establishing disability includes subjective complaints of pain even where the pain is unsupported by clinical or medical findings provided that the underlying impairment can be "medically ascertained."  20 C.F.R. § 404.1529 (2003); see also Snell v.

---

[3] All other findings noted in the original November 10, 2003 PCE remained unchanged.  See T. 202-04, 219-21, 223-25, 239-40.

Apfel, 177 F.3d 128, 135 (2d Cir. 1999).  A finding that a claimant suffered from disabling pain requires medical evidence of a condition that could reasonably produce such pain.  An ALJ must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be expected to be consistent with the medical and other evidence.  20 C.F.R. § 404.1529 (2003); Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999).  Pain is a subjective concept  "difficult to prove, yet equally difficult to disprove" and courts should be reluctant to constrain the Commissioner's ability to evaluate pain.  Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983).  "The ALJ must discuss his resolution of the claimant's credibility regarding pain in a narrative discussion that provides specific reasons for the weight that he assigned to the claimant's statements; he may not merely conclude that the claimant's statements are not credible."  Lewis v. Apfel, 62 F. Supp. 2d 648, 658 (N.D.N.Y. 1999).

The claimant's credibility and motivation, as well as the medical evidence of impairment, are used to evaluate the true extent of the alleged pain and the degree to which it hampers the applicant's ability to engage in substantial gainful employment.  See Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1978); Lewis, 62 F. Supp. 2d at 653.  If there is conflicting evidence about a claimant's pain where the degree of pain complained of is not consistent with the impairment, the ALJ must make credibility findings.  Donato v. Sec'y of HHS, 721 F.2d 414, 418-19 (2d Cir. 1983).  The ALJ must consider several factors pursuant to 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3):

> (I)  [The claimant's] daily activities;

> (ii)  The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv)  The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;
>
> (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;
>
> (vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2003).

Here, the ALJ concluded that Mero's subjective complaints were "somewhat overstated." T. 25.  In support of his determination, the ALJ appears to rely on the fact that there was a considerable gap in Mero's treatment record from 2001 to 2003 and that Dr. Sam had noted in May 2003 that Mero lifted his daughter off a swing.  Id.  Further, the ALJ discusses Mero's testimony at the November 24, 2003 and February 11, 2004 hearings regarding his daily activities.  Id.  However, the ALJ failed to provide a detailed narrative discussion of the factors outlined above.  See Lewis, 62 F. Supp. 2d at 658.   Although the ALJ provided some explanation as to the weight he assigned to Mero's credibility, it is unclear from his reasoning whether his conclusion is supported by substantial evidence.  Therefore, this case is remanded as well for a more detailed discussion of the ALJ's reasons for concluding that Mero's subjective complaints were "somewhat overstated."

### D. Remand or Reversal

A reviewing court has the authority to reverse with or without remand. 42 U.S.C. §§ 405(g), 1383(c)(3) (2003). Remand is appropriate where there are gaps in the record or further development of the evidence is needed. <u>Curry</u>, 209 F.3d at 124. Reversal is appropriate, however, where there is "persuasive proof of disability" in the record and remand for further evidentiary development would not serve any purpose. <u>Id.</u>; see also <u>Parker v. Harris</u>, 626 F.2d 225, 235 (2d Cir. 1980). Here, the record is unclear regarding whether the ALJ evaluated properly Dr. Gregorian's medical opinion and explained properly his conclusion that Mero's subjective complaints of pain were somewhat overstated. Accordingly, the decision of the Commissioner is remanded for further proceedings rather than reversed.

### VI. Conclusion[4]

For the reasons stated above, it is hereby

**ORDERED** that the decision be **REMANDED** for further proceedings.

DATED: April 5, 2007
       Albany, New York

_____
United States Magistrate Judge

---

[4] In his brief, Mero asserts two other grounds for reversal or remand of the ALJ's determination. Pl. Mem. of Law (Docket No. 11) at 1. However, in light of the remand of the case, it is unnecessary to address the other grounds.